UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

SHELLY M. PODCZERVIENSKY,           Case No. 05-21514-dob
                                                       Chapter 7 Proceeding
                     Debtor.                            Hon. Daniel S. Opperman
_____/

**OPINION GRANTING TRUSTEE'S OBJECTIONS TO THE
DEBTOR'S AMENDED EXEMPTIONS**

This case comes before the Court upon the Objection of Trustee Karen Evangelista to Amended Exemptions Claimed by Debtor. This Opinion supplements the Court's bench decision issued on August 31, 2007. The recitation of the history of this case is important to an understanding of the Court's decision.

**I.
JURISDICTION**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and (B), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a).

**II.
FINDINGS OF FACT**

The Debtor, Shelly M. Podczerviensky, filed a Chapter 7 Petition on April 4, 2005. Trustee Evangelista was appointed as the Trustee for the Debtor's bankruptcy estate, which included real property generally known as 135 Fair Street, Bad Axe, Michigan ("Fair Street Property"). The Fair Street Property was listed as being jointly owned by the Debtor and Dennis J. Luttman. The Debtor's original Schedule C listed a claimed exemption in the real property in the amount of $18,450.

On June 29, 2005, Trustee Evangelista filed an Objection to the Debtor's Claim of

1

Exemptions because the Debtor did not reside at the Fair Street Property. The Debtor did not respond to the Trustee's Objection. Accordingly, on July 27, 2005, this Court entered an Order Sustaining the Trustee's Objection to Exemptions.

On November 23, 2005, Trustee Evangelista filed an Adversary Complaint to sell the estate's interest in the Fair Street Property pursuant to 11 U.S.C. § 363(h). The Defendant in this Adversary Proceeding was Mr. Luttman who likewise failed to respond to the Complaint. Accordingly, on May 2, 2006, the Court entered an Order granting Judgment in favor of Trustee Evangelista and against Mr. Luttman.

Over one year later, the Debtor filed an amendment to her Schedules seeking to exempt monies from the sale of the Fair Street Property. These amendments were made over two years after the Debtor filed her original Chapter 7 Petition, approximately 23 months after the Trustee objected to the original exemptions listed in Schedule C, approximately 21 months after the Court entered an Order Sustaining Trustee's Objections to Claimed Exemptions, and over one year after the Court entered the Order in the Adversary Proceeding against Mr. Luttman.

This Court conducted a hearing on this matter on July 26, 2007. At the hearing, Mr. Lockard, counsel for the Debtor, placed the blame for these delays on his office and his inability to communicate with the Debtor. At the July 26, 2007, hearing, the Court was concerned whether a sufficient factual basis existed to rule either way in regard to the Trustee's Objection, but the counsel for the Trustee and counsel for the Debtor agreed that all relevant facts were before the Court.

### III.
### DISCUSSION

Amendments to schedules are freely given, and the debtor is under an obligation to amend schedules when necessary. The Sixth Circuit Court of Appeals has endorsed this approach in the case

of *Lucius v. McLemore*, 741 F.2d 125 (6th Cir. 1984). *Lucius* held, in part that, "courts may still refuse to allow an amendment where the debtor has acted in bad faith or where property has been concealed." *Lucius*, 741 F.2d at 127.

In *Lucius*, the debtors filed a Bankruptcy Petition on October 20, 1982, and the first meeting of creditors was held December 16, 1982. On January 18, 1983, the trustee filed a suit against the debtors to prevent their discharge, and on February 7, 1983, the debtors filed an amendment to their schedules to add vehicles that were the basis of the January 18, 1983, lawsuit. In *Lucius*, the Sixth Circuit Court of Appeals held that the requisite bad faith did not exist to prohibit the amendment of the schedules.

Applying the *Lucius* rationale to the instant case, the Court notes that the debtors in *Lucius* acted very quickly in response to what undoubtedly was told to them by the trustee at the first meeting of creditors and later confirmed with the filing of the lawsuit approximately one month later. Comparing the *Lucius* facts to the case at bar, the Court notes that the Debtor failed to respond to the objection to exemptions that were clearly improperly misstated and, further, failed to quickly amend those stated exemptions when it became clear that the Debtor had unutilized and available exemptions to do so. In fact, it appears that the Debtor did not take any action to amend the exemptions until approximately one year after the Judgment was entered in the Adversary Proceeding. Although Debtor's counsel has volunteered to shoulder the blame for this delay, that noble action does not address or cover up the glaring fact that the Debtor has failed to act whatsoever in protecting her rights for over two years.

In contrast, the actions of the Trustee are consistent with the practices and timing of the Bankruptcy Court and bankruptcy system, especially given the time constraints in 2005, when this case was filed.

Since the *Lucius* case, a number of courts in this district have addressed whether a debtor may amend exemptions and whether a trustee's objection to those amendments should be sustained because of prejudice or estoppel. For example, the Court in *In Re Daniels*, 270 B.R. 417, 425 (Bankr. E.D. Mich. 2001), held that a debtor's amendment to exemptions could not be allowed because of the prejudice to the bankruptcy estate. Likewise, in *Shapiro v. First Franklin Corp., et al.* (*In Re Rechis*), 339 B.R. 643, 646 (Bankr. E.D. Mich. 2006), Chief Judge Rhodes sustained the objections to the debtor's amended exemptions based on the doctrine of laches. In particular, the *Rechis* case set forth the following analysis, which "requires proof of: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Rechis*, 339 B.R. at 645. As near as this Court can tell, the Sixth Circuit has not had to address this issue since *Lucius,* and it appears that other courts have engaged in an analysis of the balancing of rights and interests to determine whether a debtor's amendments should be allowed.

In this case, the Court is convinced and so finds that the facts, as stated previously, are distinguishable and different than those set forth in *Lucius*. It is the finding of this Court that the Debtor's actions, by failing to either respond to the original Objection to Exemptions by amending her exemptions, and then allowing the Chapter 7 Trustee to initiate an Adversary Proceeding that was prosecuted to Judgment at least one year prior to her amendment to exemptions, constitute the sufficient indicia of the lack of good faith found in *Lucius*. As stated previously, in *Lucius*, the debtors amended their schedules within 60 days of their first meeting of creditors and within 20 days of the trustee filing the lawsuit against them. The Court, therefore, finds that the Debtor in this case lacks the requisite good faith to be allowed to amend her exemptions. The Trustee's objections are, therefore, sustained.

Needless to say, if this Court were to adopt either the *Rechis* or the *Daniels* analysis, the

4

result and conclusion would be the same. The overwhelming prejudice to the bankruptcy estate, as well as to the Chapter 7 Trustee, is of such land slide proportions to sustain the objections to the amended exemptions under either the *Daniels* or the *Rechis* rationales.

Finally, this Court feels compelled to place today's decision in perspective in regard to the entire bankruptcy system and process. As has been stated by numerous courts across the nation, any debtor who files a petition for relief in good faith with the court is entitled to the full and complete relief afforded to that debtor as allowed and mandated by Congress. In many cases, this relief is the automatic stay of any action against a debtor to collect a debt, as well as the possible discharge of that debt. In exchange, which is likewise directed and mandated by Congress, debtors must file Schedules, a Statement of Financial Affairs, and other documents in complete and full disclosure, and also cooperate with the appointed trustee, be it either a Chapter 7, Chapter 13, or United States trustee. The trustees are charged with the duty of investigating assets and liabilities and, in the case of a Chapter 7 trustee, determining on a relatively quick and efficient basis, whether a Chapter 7 estate should remain open as to allow for the liquidation of an asset and distribution to creditors, or whether the estate should be closed.

When all parties, namely the debtor, the trustee, and creditors, completely and honestly fulfill their role, the ends of the bankruptcy system are met efficiently and sufficiently. Debtors and creditors alike receive the necessary financial closure to allow them to continue. When any of these parties fails to so act, however, the bankruptcy system grinds to a halt and the stated goals of Congress are thwarted. In the instant case, it is this Court's conclusion that the Debtor's actions, or more appropriately inactions, serve as a prime example of when an individual fails to fulfill their duty, and the system grinds to a halt. To the extent that this Court can avoid such a result, the Court will do so by sustaining the Trustee's objections to the Debtor's amended exemptions. In so doing, the

5

Court sends a clear message to insure timely and complete action by every party in the bankruptcy system.

```
Signed on November 02, 2007
                                              /s/ Daniel S. Opperman
                                         Daniel S. Opperman
                                         United States Bankruptcy Judge
```